**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANDY SMITH; ERIN SMITH; GRACE
SMITH,

     Plaintiffs - Appellants,

v.

                                 No. 25-8039

ALBANY COUNTY SCHOOL
DISTRICT NO. 1 BOARD OF
TRUSTEES; JANICE MARSHALL, in
both her individual and official capacities
as Chairman for the Board of Trustees for
Albany County School District No. 1;
NATE MARTIN, in both his individual
and official capacities as Trustee for the
Board of Trustees for Albany County
School District No.1; KIM SORENSON, in
both his individual and official capacities
as Trustee for the Board of Trustees for
Albany County School District No. 1;
EMILY SIEGEL-STANTON, in both her
individual and official capacities as Trustee
for the Board of Trustees for Albany
County School District No. 1; BETH
BEAR, in both her individual and official
capacities as Chairman for the Board of
Trustees for Albany County School District
No. 1; LAWRENCE PAREA, in both his
individual and official capacities (and/or
his successor(s) in their official capacity)
as Trustee for the Board of Trustees for
Albany County School District No. 1; DR.
JUBAL YENNIE, Ed.D., in both his
individual and official capacities (and/or
his successor(s) in their official capacity)
as Superintendent of Albany County

School District No. 1; JEFF LEWIS, in both his individual and official capacities (and/or his successor(s) in their official capacity) as Principal of Laramie High School,

     Defendants - Appellees.

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:23-CV-00159-KHR)**

_____

Submitted on the briefs:*

Randy B. Corporon and Matthew T. Arnold, Law Offices of Randy B. Corporon, P.C., Greenwood Village, Colorado, and Roxie Lee Hensley, Hensley Law, LLC, Laramie, Wyoming, for Plaintiff-Appellants.

L. Kathleen Chaney and Eric D. Hevenor, Lambdin & Chaney, LLP, Denver, Colorado, for Defendants-Appellees.

_____

Before **TYMKOVICH**, **MURPHY**, and **BACHARACH**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

Grace Smith was a junior at Laramie High School in September 2021 when the Albany County School District No. 1 Board of Trustees instituted a COVID-19 indoor mask mandate. She refused to wear a mask, causing school administrators to

_____

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

2

repeatedly suspend her and, eventually, to have her arrested when she would not leave school grounds. In response, Grace and her parents sued the Board, the superintendent, and the Laramie High School principal (collectively, the District) under 42 U.S.C. § 1983 and Wyoming law for allegedly infringing on their federal and state rights.

The federal claims accuse the District of violating (1) the First Amendment by compelling speech and retaliating against Grace for her protected opposition to compelled speech, and (2) the Fourteenth Amendment's due-process guarantee by depriving her of her protected property interest in a public education. The district court granted the District's motion to dismiss for failure to state a claim on each of the federal causes of action, declined to exercise supplemental jurisdiction over the state-law claims, and dismissed the case.

Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM**. A compelled-speech claim requires the plaintiff to allege some message that the government entity forced the plaintiff to propound. But the Smiths have alleged no such message. Their retaliation claim fails because they have not adequately alleged that Grace's refusal to wear a mask was expressive conduct protected by the First Amendment, or that her other protest activity was the but-for cause of the District's decision to punish her. Further, the Smiths' complaint reveals that Grace received notice and opportunity for a hearing before she was suspended, which was sufficient process to satisfy the Fourteenth Amendment's requirements. Thus, the district court correctly

3

dismissed each of the federal claims and acted within its discretion by dismissing the supplemental state-law claims.

## I. Background

Grace started her junior year at Laramie High School in late August 2021. In response to a local uptick in COVID-19 cases at the time, the District superintendent developed a COVID mitigation plan that included an indoor mask mandate for kindergarten through twelfth grade. The Board approved the mandate on September 8, effective through October 15. On the first day of implementation, September 9, Grace and other students who refused to wear masks were forced to leave school. After exiting the school, Grace stood outside and held two signs reading "no more masks" and "join our peaceful protest." App. 28. The next day, Grace led a walkout of roughly eighty students to protest the mandate.

Grace and her father met with the District superintendent on September 15 to discuss the mandate and challenge the District's authority to implement it. When Grace asked about potential consequences for refusing to wear a mask, the superintendent said it "is the same as any other Board policy regarding student behavior" and stated specific punishment would be up to the Board. App. 29.

On September 30, Grace received a two-day out-of-school suspension for not complying with the mask mandate. When she returned to school on October 5 and again refused to mask, the Laramie High School principal issued her a second two-day suspension. Grace initially refused to leave the school but departed after receiving a trespass citation from the Laramie Police Department. She returned to

4

school on October 7 and received a third two-day suspension for not masking. But this time, Grace did not leave after a police officer cited her for trespassing. The officer eventually arrested Grace, drove her to the police station, booked her, and released her to her father.

Grace did not return to school when her suspension ended. On October 13, she spoke to the Board over Zoom and withdrew from Laramie High School.

Grace's parents, Andy and Erin Smith, sued the Board, superintendent, and Laramie High School principal in Wyoming state court. Acting for themselves and on Grace's behalf, the Smiths brought six claims—three federal and three state. The federal claims all fall under § 1983 and allege the Board: (1) deprived Grace of her First Amendment rights by compelling speech, (2) violated the First Amendment by retaliating against Grace for protesting the mask mandate, and (3) violated the Fourteenth Amendment by depriving Grace of a protected property interest in education without due process. The state-law claims allege: (4) the Board interfered with the Smiths' fundamental right to care for their child in violation of the Wyoming constitution and state statutes, (5) the Board acted ultra vires by enacting a public health policy without authority, and (6) the Wyoming legislature exceeded its state-constitutional powers by enacting a statute modifying public health authorities.

The District removed the suit to federal court and moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). The district court held that the Smiths had not alleged an injury-in-fact and therefore lacked standing. As a result, it dismissed the

federal claims for lack of subject matter jurisdiction and declined to exercise supplemental jurisdiction over the state-law claims.  We reversed, holding the Smiths had alleged an injury-in-fact because they alleged Grace was repeatedly punished for opposing the mandate, had been suspended three times, and was cited for trespassing and arrested when she refused to leave campus.  *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374, 1377–78 (10th Cir. 2024).

On remand, the district court dismissed each of the federal claims for failure to state a claim under Rule 12(b)(6).  First, it held the mask mandate was not compelled speech.  Next, it held the school district did not retaliate against Grace because her non-compliance with the mandate was not protected speech.  Further, the Smiths had not plausibly alleged a link between Grace's protected speech—leading the walkout and discussing her opposition to the mandate with the superintendent—and the District's disciplinary actions.  Finally, it held Grace had not adequately alleged a due-process violation because the complaint did not allege facts sufficient to show a deprivation of process.  After dismissing the federal claims, the court declined to exercise supplemental jurisdiction over the state claims.

## II.    Discussion

The Smiths appeal the dismissal of their federal claims and urge us to consider their state-law claims.  They argue mask wearing is a form of speech that cannot be compelled and say the district court was wrong to hold otherwise.  Further, they contend that Grace's refusal to mask was expressive conduct protected under the

6

First Amendment and that the District's decision to punish Grace for her noncompliance was therefore unlawful retaliation.

As for Grace's other protest activity, the Smiths argue the close temporal proximity between the walkout and suspensions establishes a retaliatory motive. They also claim the mask mandate violated substantive and procedural due process by arbitrarily infringing on Grace's right to "breathe freely" and depriving her of her property interest in a public education. Opening Br. 32. Finally, the Smiths ask us to consider the merits of their state-law claims if any of their federal claims survives our review.

We review a district court's dismissal for failure to state a claim under Rule 12(b)(6) de novo. *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). To survive a motion to dismiss, "a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In a First Amendment case, we "make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010).

7

### A.      First Amendment Compelled Speech

The Smiths argue that the District's mask mandate compelled Grace to speak against her will.  Since, in their view, the District had no authority to promulgate a public health order, the mask mandate had no legitimate purpose and was instead imposed to "endorse a favored message."  Opening Br. 19.  But the Smiths' complaint does not articulate what message they believe the mandate conveyed.  That deficiency is fatal to their compelled-speech claim.

The First Amendment prohibits the government from telling people what they must say "in politics, nationalism, religion, or other matters of opinion."  *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).  It does not matter "whether the government seeks to compel a person to speak its message when he would prefer to remain silent or to force an individual to include other ideas with his own speech that he would prefer not to include."  *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023).  In line with these principles, we have interpreted the Amendment as protecting against "(1) speech; (2) to which [a person] objects;" being "(3) compelled by some governmental action."  *Cressman v. Thompson* (*Cressman II*), 798 F.3d 938, 951 (10th Cir. 2015) (addressing imagery on an Oklahoma license plate).

The First Amendment's definition of speech extends beyond the written and spoken word to cover other communicative conduct such as "symbolic speech."  *Id.*  But not all communicative conduct qualifies.  Rather, conduct must be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments."  *Spence v. Washington*, 418 U.S. 405, 410–11 (1974).

8

Conduct can qualify for First Amendment protection if "[a]n intent to convey a particularized message was present, and the likelihood was great that the message would be understood by those who viewed it." *Id.*

The Supreme Court reaffirmed the *Spence*-test in *Texas v. Johnson*, 491 U.S. 397 (1989) (addressing flag burning at a protest rally), but subsequently recognized that "a narrow, succinctly articulable message is not a condition of constitutional protection," *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995) (addressing message expressed by St. Patrick's Day parade organizers through the parade's composition). We have interpreted *Hurley* in the compelled-speech context as modifying the *Spence*-test by eliminating the "particularized message" requirement. *Cressman II*, 798 F.3d at 956. Thus, a party asserting a compelled-speech claim based on symbolic speech must identify either a "particularized [or] general message . . . that a reasonable observer would perceive." *Id.*

The Smiths' complaint does not identify any particular or general message compelled by the mask mandate. Instead, the Smiths allege that the "wearing of masks is a form of speech," App. 16, that the mandate compelled Grace "to utter what [wa]s not in h[er] mind," App. 33 (alterations in original) (quoting *Barnette*, 319 U.S. at 634), and that she disagreed "with compelled speech which was unlawfully cloaked as a public health mandate," App. 33. But in reality each of these statements is a "legal conclusion couched as a factual allegation" which we are "not bound to accept." *Iqbal*, 556 U.S. at 678. Regardless, the relevant inquiry is not

9

whether wearing masks qualifies as speech in the abstract—it might in some contexts; we must determine whether a reasonable observer would discern that the District's mask mandate communicated a message identified by the Smiths. *See Cressman II*, 798 F.3d at 956. The Smiths have framed their allegation at too high a level of abstraction and fail to identify *any* readily identifiable message conveyed by the mandate. That failure undermines their claim and prevents us from proceeding to the second, reasonable-observer step in the symbolic-speech inquiry.[1]

We recognize that the Smiths later identified—in their briefing—possible messages conveyed by the mandate. In their response to the motion to dismiss in the district court, for example, the Smiths claimed the mandate compelled an outward expression of "agreement with government health policies." App. 113. The Smiths' opening brief similarly argues the District adopted the mandate "to send the message that masking was the 'right' thing to do, and that the Board was the 'right' body to make that decision." Opening Br. 23. And their reply brief contends that the mandate's "particularized message" was "obey, comply, conform." Reply Br. 12. But when reviewing a Rule 12(b)(6) dismissal, we may consider only the complaint and "attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted). We express no opinion on whether the messages the Smiths identified in their briefing

---

[1] Simply put, we cannot assess whether a reasonable observer would understand the mandate's message without knowing what the message is.

10

meet the *Cressman II* standard; we merely note that we cannot consider them because they are outside the pleadings.

The Smiths' failure to plead a particular or general message compelled by the mask mandate means their compelled-speech claim fails on the first prong of the analysis. *See Cressman II*, 798 F.3d at 951 (explaining a compelled-speech claim must first establish "speech"). We therefore affirm the dismissal of the Smiths' compelled-speech claim.

### B.    First Amendment Retaliation

The Smiths' second claim alleges the District unlawfully retaliated against Grace for exercising her First Amendment right to speak on a matter of public concern. "The First Amendment bars retaliation for protected speech and association." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1294 (10th Cir. 2008). A First Amendment retaliation claim has three components: (1) the "plaintiffs were engaged in constitutionally protected activity"; (2) the "defendants caused the plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the "defendants' actions were motivated by plaintiffs' protected activity." *Id.* (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

According to the Smiths' complaint, Grace engaged in three forms of constitutionally protected activity: (1) organizing and leading a walkout against the mask mandate, (2) speaking with District officials about her opposition to the mandate, and (3) engaging in symbolic speech by refusing to comply with the

mandate. They further alleged the District's decision to suspend Grace three times and to have her fined and arrested for trespassing would chill a person of ordinary firmness from continuing to protest the mandate. And they claim the District was motivated to punish Grace for her "open defiance of the . . . requirement for indoor mask use." App. 37.

The district court determined the "walkout and related demonstrations" were protected speech but found the Smiths had not alleged a causal link between those activities and her suspensions. It also held that non-compliance with the mandate was not First Amendment speech and therefore was not protected activity. As a result, the Smiths had not plausibly alleged a case of unlawful retaliation.[2] We agree.

### 1. *Walkout Demonstration*

The District does not contest the district court's determination that Grace's participation in the walkout and related demonstrations was protected activity.[3] It also does not challenge, and therefore concedes, that the Smiths have adequately pled

---

[2] The district court did not address Grace's discussions with District administrators. The Smiths' opening brief does not mention the meeting or argue that the district court erred by not discussing it. As a result, we do not address that allegation on appeal. *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) ("Issues designated for review are lost if they are not actually argued in the party's brief." (citation modified)).

[3] The District's response brief argues only that the Smiths have not met the first element of retaliation because Grace's "refusal to wear a mask was not protected First Amendment speech." Resp. Br. 38.

the chilling prong of a retaliation claim.  That leaves only causation—or motivation—for our review.

In a First Amendment retaliation claim, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'"  *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)).  Retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Id.*

The Smiths' complaint alleges the District suspended Grace for "open defiance of the . . . requirement for indoor mask use."  App. 37.  A straightforward reading of that language conveys the District punished Grace for her refusal to wear a mask on campus.  It does not indicate at all—let alone clearly or sufficiently—that the District's actions were motivated by Grace's role in the walkout.  And even under a generous reading of the complaint, the Smiths have not alleged that participation in the walkout was the but-for cause of Grace's suspensions.  Thus, the Smiths' own allegation that the District punished Grace for refusing to comply with the *mask mandate itself* undercuts their argument that the District was motivated *by the walkout*.

The Smiths claim the temporal proximity between Grace's suspension and the walkout supports an inference of retaliation.  Even assuming that twenty days between protected activity and punishment is sufficiently brief to support their argument, we have repeatedly explained that "the mere temporal proximity of a

Plaintiff's protected speech to the adverse action is insufficient, without more, to establish a retaliatory motive." *Baca v. Sklar*, 398 F.3d 1210, 1221 (10th Cir. 2005) (citation modified). Relying on a Title VII case, the Smiths contend that "temporal proximity may support a *prima facie* inference that the protected activity was a contributing factor" to the adverse action. Opening Br. 28 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). Even if the same inference applied in the First Amendment context, a finding that protected activity was a contributing factor falls short of *Nieves*'s requirement that it be the "but-for" cause. 587 U.S. at 398. Thus, the Smiths' argument for an inference from temporal proximity—without more—falls short of the necessary showing for retaliatory motive.

In sum, the Smiths have not plausibly alleged that Grace's participation in the walkout was the but-for cause of her suspensions. As a result, their claim that the District retaliated against her for that protected activity fails.

### 2.     *Refusal to Wear a Mask*

The Smiths' next argument is that Grace's refusal to wear a mask was a symbolic expression of her "disagreement with compelled speech." App. 36. Unlike their walkout allegation, the Smiths' claim that the District punished Grace for open defiance of the mask mandate establishes the necessary link between the alleged protected activity and the District's motivation. Thus, the key question is whether Grace's refusal to mask is symbolic speech protected by the First Amendment.

The district court held that Grace's conduct was not constitutionally protected because compliance or noncompliance with a policy is not "forced speech or

14

expressive conduct." App. 155. It explained that mask-wearing—and impliedly the choice not to do so—is not "primarily expressive" and therefore not protected speech. App. 156. As a result, Grace's refusal to wear a mask was not speech and could not support a claim of First Amendment retaliation. We stop short of endorsing a per se rule that noncompliance with a policy regulating conduct can never receive First Amendment protection. *See Troster v. Penn. State Dep't of Corr.*, 65 F.3d 1086, 1093 (3d Cir. 1995) (explaining "refusal to comply with a governmental directive may in some cases amount to symbolic protest covered by the First Amendment"). But we agree with the district court that Grace's noncompliance with the District's mask mandate in this context does not cross the line into protected expressive conduct for First Amendment purposes.

Again, whether conduct is sufficiently communicative to warrant First Amendment protection is determined by the *Spence*-test. *Johnson*, 491 U.S. at 404. To survive dismissal the Smiths must allege that Grace's conduct (1) "inten[ded] to convey a particularized message,"[4] and (2) "in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Spence*, 418 U.S. at 410–11. They satisfy the first element by asserting a message of "disagreement with compelled speech which was unlawfully cloaked as a public health mandate." App. 36–37. Their complaint, however, does not plausibly allege a

---

[4] Since the Smiths allege Grace's conduct communicated a particularized message, we need not decide whether *Hurley* modified the first *Spence* prong outside the compelled-speech context.

"great likelihood" that an onlooker would understand Grace's message.  For instance, in context of the pandemic and contemporaneous debate over the efficacy of masks, an observer could reasonably conclude Grace was not masking for reasons unrelated to supposed compelled speech: that she generally disagreed with the mandate, that she had a health-related reason not to wear a mask, or that she believed masks offered no meaningful protection from COVID-19.

The complaint also describes Board meetings in which Board members and the superintendent acknowledged they were not public health officers and debated their authority to mandate masks despite state and county public health agencies' explicit decisions not to.  App. 23–27.  Thus, an observer, aware of the circumstances of the District's decision to implement the mandate, could conclude Grace's non-masking was meant to convey her belief that the District had no authority to impose a mandate.  But we think it is unlikely that an onlooker would discern a message of opposition to compelled speech that the mandate symbolically represented.  Indeed, the existence of other more plausible explanations for a person's decision to defy a mask mandate weighs against finding that an observer would be very likely to identify Grace's particular message.  *See Falcone v. Dickstein*, 92 F.4th 193, 207 (3d Cir. 2024) (finding a refusal to mask "susceptible to multiple interpretations").

The Smiths make two unsuccessful counterarguments.  First, they say Grace's defiance of the mandate "conveyed a message of opposition" that was "amplified by the walk-out and protest signs."  Opening Br. 25.  But as we have already discussed, we will not entertain the Smiths' late attempts to convert Grace's message into

16

something different from the one alleged in the complaint. Regardless, we do not see how carrying signs that read "no masks" and "join our peaceful protest" plainly communicate opposition to compelled *speech*. *See* App. 28. More fundamentally, the suggestion that Grace's message needed explanatory support from her other protest activities counsels against finding that her refusal to mask was expressive conduct. *See Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 66 (2006). While context drives the expressive-conduct inquiry, a plaintiff cannot "transform conduct into 'speech' simply by talking about it." *Id.* Thus, if "the expressive component" of Grace's conduct "is not created by the conduct itself but by the speech that accompanies it," then that conduct "is not so inherently expressive that it warrants protection." *Id.*

Second, the Smiths claim their factual allegation that multiple students and school staff members told Grace they "received and understood [her] pure symbolic speech" satisfies the *Spence*-test's requirement.[5] But the fact that an unidentified number of observers understood Grace's intended message does not answer the legal question of whether there was a great likelihood that observers would understand the

---

[5] Pure speech is "[w]ords or conduct limited in form to what is necessary to convey [an] idea." *Speech*, Black's Law Dictionary (12th ed. 2024). Because pure speech implicates core First Amendment considerations, it is "rigorously protected regardless of meaning." *Cressman II*, 798 F.3d at 951. The Smiths' complaint and briefing repeatedly blurs the categories of pure speech and symbolic speech. For clarity, we note Grace's refusal to wear a mask does not qualify as pure speech and is subject to the test for allegedly symbolic conduct. *See id.* (identifying types of pure speech and collecting cases).

message. The test is an objective one; it cannot be met through a general claim that an unknown number of people told Grace they subjectively understood her message. *See White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1540 (D.C. Cir. 1984) (describing the second prong as the "objective requirement[] of the constitutional test").

Instead, the Smiths needed to allege facts about the context of Grace's refusal to mask that would enable an objective reasonable observer to understand her message. *See Spence*, 418 U.S. at 410 ("[T]he context in which a symbol is used for purposes of expression is important, for the context may give meaning to the symbol." (citing *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503 (1969))). But the complaint does not allege that necessary context—it does not indicate that compelled speech was a topic of concern in the community at the time, or that students, parents, or staff widely considered the mandate as implicating speech. Rather, the Smiths' recounting of discussions at Board meetings reveals that the prevailing issues were the pandemic and what efforts the District could take to protect students from disease. In that context, we cannot conclude an objective observer would identify what is, essentially, an idiosyncratic message against compelled speech.

Since Grace's refusal to mask is not expressive conduct protected by the First Amendment, it cannot serve as the basis for a retaliation claim. We affirm the district court's dismissal of the Smiths' retaliation claim on those grounds.

18

## C.    Deprivation of Due Process

The Smiths' final federal claim contends that the District deprived Grace of due process in violation of the Fourteenth Amendment.  The complaint alleges a deprivation of due process arising from the District's "promulgat[ion] and enforce[ment] [of] the [m]ask [m]andate."  App. 41.  It specifically claims that the District "arbitrarily and capriciously deprived [Grace] of protected property interests," App. 41, a category of interests safeguarded by procedural due process, *see Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  In the lower-court proceedings, however, the District construed the allegation as a substantive due process claim, and the parties argued it on those grounds.  Since the district court addressed both procedural and substantive due process, we do the same.  The Smiths fail under either theory.

### 1.    Procedural Due Process

The Smiths allege the District "failed to meet basic constitutional standards of due process when [it] promulgated and enforced the Mask Mandate."  App. 40–41.  And they claim the District "arbitrarily and capriciously deprived [Grace] of protected property interests, including, but not limited to, education, body autonomy, medical decision making, and to be afforded protection offered under [Wyoming law]."  App. 41.  Further, they claim Grace had a "legitimate entitlement to a public education" and could not be deprived of that right by imposition of "an illegal compelled speech mandate."  App. 40.  While the Smiths do not fully develop their procedural due process argument, they argue "students are entitled to due process

19

protections before being deprived of their education."  Opening Br. 32 (citing *Goss v. Lopez*, 419 U.S. 565, 572 (1975)).  We read the complaint as most clearly alleging the District deprived Grace of her protected property interest in a public education without sufficient process.

"The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law."  *Goss*, 419 U.S. at 572.  Students have a protected property interest in public education when state law entitles them to one.  *Id.* at 573.  A student also has a protected liberty interest when his "good name, reputation, honor, or integrity is at stake because of what the government is doing to him."  *Id.* at 574 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).  That protection extends to a student's punishment for alleged misconduct.  *Id.* at 575.

We have no doubt that Grace's three two-day suspensions interfered with her ability to receive a public education to which she was entitled by Wyoming law.  *See* Wyo. Stat. Ann. § 21-4-301 (2025) (mandating school districts provide free education to all children ages five to twenty-one).  The question, then, is whether the District afforded her adequate process.  For suspensions of ten days or less, "due process requires . . . that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."  *Goss*, 419 U.S. at 581.  "[A]s a general rule notice and hearing should precede removal of the student from school."  *Id.* at 582.  The hearing need not be formal, and students are not entitled to "the opportunity to secure counsel, to confront and cross-examine witnesses supporting

20

the charge, or to call his own witnesses to verify his version of the incident." *Id.* at 583.

The Smiths' complaint does not adequately allege that the school district denied Grace sufficient process before suspending her. To the contrary, the complaint acknowledges that Grace and several family members met with the District superintendent to discuss the mask mandate before she was suspended. At that meeting, the superintendent told Grace that refusing to wear a mask would be treated "the same as any other Board policy regarding student behavior." App. 29. Further, before issuing each of the suspensions, the Laramie High School principal informed Grace she was being suspended for "continu[ing] to demonstrate open defiance of the authority of the ACSD#1 Board of Trustees requirement for indoor mask use." App. 30 (alteration in original). The Smiths do not claim Grace ever denied the charge when confronted. Yet they acknowledge that upon receiving her third suspension Grace was afforded a "pre-suspension conference" with a school administrator. App. 30. She does not suggest the District denied her a similar conference before her first or second suspensions, or claim the conference was in any way deficient.

In sum, the District provided Grace notice and an opportunity to be heard before her suspensions. For short suspensions like Grace's, that is all the Fourteenth Amendment requires. *See Goss*, 419 U.S. at 581–82.

### 2. *Substantive Due Process*

Though the complaint alleges a deprivation of procedural due process, the Smiths argued in district court that the mask mandate implicated substantive due

21

process.  Since the district court addressed the parties' arguments and the Smiths continue to press the claim on appeal, we address it for completeness.

We recognize "two types of substantive due process claims: (1) claims that the government has infringed a fundamental right; and (2) claims that governmental action deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience."  *Stepp v. Lockhart*, 168 F.4th 1286, 1313 (10th Cir. 2026) (citation modified); *see also* Timothy M. Tymkovich, Joshua Dos Santos & Joshua J. Craddock, *A Workable Substantive Due Process*, 95 Notre Dame L. Rev. 1961, 1989– 93 (2020) (discussing the two strands of substantive due process).  "[W]e apply the fundamental-rights approach when the plaintiff challenges *legislative action*, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious *executive action*."  *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018).  The Smiths allege the District "failed to meet basic constitutional standards of due process when [it] promulgated and enforced" the mandate.  App. 40–41.  We construe the mandate's promulgation as a legislative act and its enforcement as an executive one and analyze each in turn.

Due process "guards against arbitrary legislation by requiring a relationship between the [law] and the government interest it seeks to advance."  *Dias v. City and County of Denver*, 567 F.3d 1169, 1181 (10th Cir. 2009).  If the enactment implicates a fundamental right, it must be "narrowly tailored to serve a compelling state interest."  *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).  A fundamental right or liberty interest is one that

is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Id.* at 720–21.

The Smiths' complaint does not identify a qualifying fundamental right. Rather, their opening brief, for the first time, asserts a right "to breathe freely, unencumbered by restrictive, ineffective, bacteria-accumulating (and thus disease-inducing) facial coverings." Opening Br. 32. Even if we overlook the pleading insufficiency and preservation issues inherent in advancing a new theory on appeal, *see Utah Animal Rts. Coal. v. Salt Lake Cnty.*, 566 F.3d 1236, 1244 (10th Cir. 2009), the Smiths make no argument for a fundamental right to breathe freely; they make only a bare, unsupported assertion. They cite no legal authority recognizing the right and do not argue it is "deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 721. Their failure to argue adequately for a fundamental right means the mask mandate is not subject to strict scrutiny.

Though the mandate does not implicate a fundamental right, it must nonetheless "be rationally related to legitimate government interests." *Id.* at 728. Rational-basis review is highly deferential to government action. *Seegmiller v. LaVerkin City*, 528 F.3d 762, 772 (10th Cir. 2008). To succeed, the Smiths must "show the governmental act complained of does not further a legitimate state purpose by rational means." *Id.* (citing *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004)). They have not met that burden.

States have a legitimate interest in "[s]temming the spread of COVID-19." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) (describing the

23

interest as "unquestionably . . . compelling"). So the Smiths must show the District's mask mandate was not rationally related to that interest. But their complaint mounts no attack against the mandate's rational basis, contains no allegation that a mask mandate is unrelated to the goal of reducing COVID transmission, and presents no facts that would support such a claim. And at the time the District implemented its mandate, public health agencies were widely promoting such policies. As a result, the Smiths' rights-based substantive due process claim fails. *See Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

The second strand of substantive due process protects against tortious executive action that shocks the conscience. *Stepp*, 168 F.4th at 1313. "'Conduct that shocks the judicial conscience' is 'deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice.'" *Id.* at 1313–14 (quoting *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013)). "This standard is exacting, and only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lindsey v. Hyler*, 918 F.3d 1109, 1116 (10th Cir. 2019) (citation modified).

The Smiths allege the District "arbitrarily and capriciously abused [its] power and deprived [Grace] of her constitutionally protected property interests." App. 41. We are unpersuaded. Whatever might be said of imposing school mask mandates or punishing students for non-compliance, neither action shocks the conscience given the widespread directives from public health officials that mandates had some utility.

24

Contrary to the Smiths' characterization of Grace's punishment as "extreme," Opening Br. 30, the Supreme Court has recognized short suspensions as a permissible disciplinary measure when students are afforded sufficient process. *Goss*, 419 U.S. at 584. As already discussed, Grace received all the process the Constitution required before each of her suspensions.

Finally, the Smiths' portrayal of Grace's arrest after her refusal to leave campus as "clearly disproportionate to any purported school interest," Opening Br. 30, falls flat. The Smiths cite no authority supporting their argument that the District had to allow Grace, a suspended student, to remain on school grounds. Given the adequacy of the process Grace received for the suspensions and her persistent refusal to depart when asked by administrators and police, the District's actions do not meet the "exacting" standard for conscience-shocking government behavior. *Lindsey*, 918 F.3d at 1116.

The Smiths have not adequately alleged an unlawful infringement of a protected right or government action so arbitrary that it is conscience shocking. Thus, their substantive due process claim fails.

### D.    *State Law Claims – Supplemental Jurisdiction*

After dismissing the Smiths' federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state-law claims regarding the District's authority under state law to impose a mask mandate. That refusal was well within the court's discretion. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and

usually should, decline to exercise jurisdiction over any remaining state claims.").

On appeal, the Smiths do not challenge the district court's decision and instead argue

that if "even one of the federal claims survive[s] review," we should exercise

supplemental jurisdiction to review the remaining state-law claims.  Opening Br. 33.

Since we have affirmed the dismissal of all the federal claims, the district court did

not abuse its discretion in dismissing the supplemental state-law claims.

## III.  Conclusion

For the foregoing reasons, we affirm the district court's judgment.